UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-CR-10249-LTS |
| | ) | |
| JEREMY D. WOODLEY, | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on October 30, 2017.  For the reasons outlined state herein, the Government believes that a sentence of 100 months' imprisonment, the low-end of the advisory guideline range, is an appropriate sentence in this matter.  The Government also requests that the defendant be placed on supervised release for a period of five years, be ordered to pay restitution in the amount of $1,526.01 to Santander Bank ($599.01 for the robbery on May 5, 2016 and $927.00 for the robbery on May 17, 2016)[1], and be ordered to pay a special assessment of $300.00.

## I. PROCEDURAL HISTORY

On August 25, 2016, Jeremey Woodley ("Woodley") was named in a three-count Indictment charging him with Bank Robbery in

---

[1] The $1,995.00 stolen from Commerce Bank was recovered by authorities at the time of the defendant's arrest on May 21, 2016.

violation of 18 U.S.C. § 2113.  On January 11, 2017, Woodley
plead guilty to the three-count Indictment.

## II.  **FACTS**

The facts, as stated in the Pre-Sentence Report ("PSR"),
are uncontested.

### A. Santander Bank - May 5, 2016

On May 5, 2016, an individual later identified as Woodley,
entered a branch of the Santander Bank located at 61 Arlington
Street in Boston, MA.  Woodley approached a teller and dropped a
handwritten note on the teller's desk, which read, "I have a
gun. I want all loose bills, no dye pack. 100's, 50's. 20's."
Woodley then stated in substance, "Give me the money no alarm no
dye packs I have a gun. Hurry up!"  The teller provided Woodley
with cash. Woodley then exited the bank, leaving the demand note
behind.  A post-robbery audit determined that Woodley took
$599.01 in U.S. currency.

Bank surveillance cameras were functioning and operating on
the date of the robbery.  The cameras captured images of Woodley
as he entered the bank, interacted with the teller, and then
exited the bank.  Pictures from the bank's surveillance cameras
were forwarded to the Boston Regional Intelligence Center
("BRIC") and posted to the Massachusetts Most Wanted Network.
Later, law enforcement personnel familiar with Woodley
positively identified him as the individual depicted in the

bank's surveillance photographs.

**B. Santander Bank - May 17, 2016**

On May 17, 2016, an individual later identified as Woodley,
entered a branch of the Santander Bank located at 279
Massachusetts Avenue in Boston, MA.  Woodley approached a teller
and passed the teller a handwritten note, which read, "I have a
gun, no one gets hurt as long as you comply. I want loose bills,
100's, 50's, 20's NO DYE PACKS Don't Play Games."  Woodley then
stated in substance, "You know what this is. I don't want to
hurt anyone. No dye packs."  Woodley also stated that he had a
gun.  The teller provided Woodley with cash.  Woodley then
exited the bank, leaving the demand note behind.  A post-robbery
audit determined that Woodley took $927.00 in U.S. currency.

Bank surveillance cameras were functioning and operating on
the date of the robbery.  The cameras captured images of Woodley
as he entered the bank, interacted with the teller, and then
exited the bank.  Later, law enforcement personnel familiar with
Woodley positively identified him as the individual depicted in
the bank's surveillance photographs.

**C. Commerce Bank - May 21, 2016**

On May 21, 2016, an individual later identified as Woodley,
entered a branch of Commerce Bank located at 1320 Washington
Street in Boston, MA.  Woodley approached a teller and dropped a
handwritten note on the teller's desk, which read, "I have a

gun, comply and no one gets hurt! NO DYE PACKS. I WANT SINGLE BILL'S 100'S & 50'S 20'S." Woodley then stated in substance, "Hurry up give me everything you have." . The teller provided Woodley with cash. Woodley then exited the bank, leaving the demand note behind. Upon exiting, Woodley was observed entering the rear passenger seat of a grey Nissan Altima.

Law enforcement broadcasted a description of Woodley and the Nissan Altima. Shortly thereafter, two officers observed a grey Nissan Altima, activated their blue lights, and then proceeded to stop the vehicle.

Subsequently, Woodley exited the vehicle and fled. After a brief foot chase, he was apprehended and placed in handcuffs. Woodley stated in substance, "The people in the car have nothing to do with this." The officers then pat-frisked Woodley and noticed a large bulge in his left pocket. Woodley stated in substance, "I'm not carrying any weapons that's just money from the bank." The officers then removed $1,995.00 from Woodley's pocket. [2]

Officers interviewed the driver of the vehicle that Woodley was observed exiting from, as well as the vehicle's front-seat passenger. It was determined that this driver was operating a

---

[2] This is the same amount of currency that a post-robbery audit would later confirm stolen.

cab in the area and had picked up Woodley for a fare.

### D. Interview of Woodley

At the police station, Woodley was advised his Miranda rights.  He agreed to be interviewed and signed a written waiver of those rights.  Woodley also allowed the interview to be audio and video recorded.

During the interview, Woodley admitted that he had robbed the Commerce Bank earlier in the day and that he had robbed two other banks earlier in the month.[3]  Woodley was shown photographs from the three robberies and identified himself in.  He then signed his name on each photograph.

## III. <u>GUIDELINE ANALYSIS</u>

### A. Offense Level Computation

The Government agrees with Probation's conclusions that Woodley's Base Offense Level is 20.[PSR ¶ 41, 48 & 55]

The Government also agrees with Probation's conclusions that since the offense involved the taking of property from a financial institution, the offense level is increased by two levels.  Furthermore, the Government agrees that since a threat of death was made, the offense level is increased by an

---

[3] Santander Bank on May 5, 2016 and on May 17, 2016

additional two levels[4].[PSR ¶ 42 & 43, 49 & 50, 56 & 57] In accordance with Probation's conclusions, this makes Woodley's Adjusted Offense Level a 24.[PSR ¶ 47, 54 & 61]

Lastly, the Government agrees with Probation's conclusions that due to multiple counts, Woodley's offense level should be increased by three levels.[PSR ¶ 64]

Thus, the Government agrees with Probation's conclusions that Woodley's total offense level is 24.[PSR ¶ 69]

**B. Criminal History**

The Government agrees with Probation's conclusions that Woodley, with a criminal history score of 15, is in criminal history category VI.[PSR ¶ 89]

The Government further agrees with Probation that, based on a total offense level of 24 and a criminal history category VI, the guideline imprisonment range is 100 to 125 months.[PSR ¶ 140]

---

[4] According to *Application Note 6* of the *Commentary* to §2B3.1, threat of death may be in the form of an oral or written statement, and the defendant need not have stated expressly his intent to kill the victim in order for the enhancement to apply. When Woodley told the victim tellers that he had a gun and demanded money from them, he was expressing to the tellers that if they did not comply with his demands, the gun would be used to harm them.

IV.  **SENTENCING RECOMMENDATION**

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

**A. Woodley's Refusal to Rehabilitate**

Woodley is a life-long criminal.  Beginning at the age of 16, Woodley's criminal career has continued largely uninterrupted into his adulthood.  Woodley has been convicted of crimes on fifteen different occasions.  As evidenced by his criminal record, it is clear that Woodley has been unwilling to refrain from criminal behavior.

Woodley has been sentenced to multiple extended periods of incarceration as well as numerous periods of probation, none of which have curbed his criminal activity.

As set forth in the PSR, Woodley's previous convictions are:

1. **PSR ¶ 71 2/10/1997 (Age 16)**
   **Robbery**
   Adjudicated delinquent, cmtd. to DYS for approx. 2
   years

2. **PSR ¶ 72 4/17/1999 (Age 18)**
   **Breaking & Entering**
   **Attempt to Commit Crime**
   **Wanton Destruction of Property**
   **Possess Burglarious Instrument**
   CWOF, probation for approx. 2 years
   VOP on 10/22/1999, CWOF revoked, 6 months HOC

3. **PSR ¶ 73 7/18/1999 (Age 18)**
   **Distribution Class B Drug**
   **Drug Violation Near School/Park**
   1 year HOC, sentence then suspended, 18 months'
   probation
   VOP on 10/20/2000, 9 months HOC, must enter drug unit

4. **PSR ¶ 74 7/18/1999 (Age 18)**
   **Receive Stolen Motor Vehicle**
   **Possess Class D Drug**
   60 days HOC

5. **PSR ¶ 75 9/4/2000 (Age 19)**
   **Larceny Over $250**
   **Possess Class B Drug**
   SENTENCE NOT LISTED

6. **PSR ¶ 76 9/21/2000 (Age 19)**
   **Possess to Distribute Class B Drug**
   9 months HOC

7. **PSR ¶ 77 4/10/2001 (Age 20)**
   **Receiving Stolen Motor Vehicle**
   6 months HOC, sentence then suspended, probation
   VOP on 7/19/2001, 6 months HOC

8. **PSR ¶ 78 4/26/2001 (Age 20)**
   **Larceny of Motor Vehicle**
   6 months HOC, sentence then suspended, probation
   VOP on 10/3/2001, 6 months HOC

9. **PSR ¶ 80 7/19/2001 (Age 20)**
   **Receiving Stolen Vehicle**

**Possess Burglarious Instrument**
**Carry Dangerous Weapon**
1 year HOC

10. **PSR ¶ 81 3/2/2003 (Age 22)**
**Trespassing**
**Carry Dangerous Weapon**
<u>SENTENCE NOT LISTED</u>

11. **PSR ¶ 82 3/30/2003 (Age 22)**
**Federal Bank Robbery**
84 months BOP, 3 years TSR
Resentenced via Booker remand 57 months BOP, 3 years
Supervised Release
Supervised release revoked 4/8/2012, 6 months BOP

12. **PSR ¶ 83 7/10/2007 (Age 26)**
**Armed Robbery**
3 years' probation
VOP on 10/31/2008, 1 year and 1 day MCI Cedar Junction

13. **PSR ¶ 84 8/8/2007 (Age 26)**
**Receiving Stolen Motor Vehicle**
**Possess Class D Drug**
10 months HOC
VOP on 7/14/2011

14. **PSR ¶ 85 5/19/2008 (Age 27)**
**Possess Class D Drug**
CWOF, probation 1 year
VOP on 7/30/2008, 120 days HOC

15. **PSR ¶ 86 1/6/2010 (Age 29)**
**Armed Robbery**
6 years' and 1 day MCI Cedar Junction, 2 years'
probation
VOP on 4/4/2016
VOP on 5/26/2016

## B. The Instant Offenses

Only a few weeks after being released from prison for the

2010 armed robbery (PSR ¶ 86), Woodley robbed three banks.

These three robberies all occurred within a one-month period. In

each of these robberies, Woodley threatened bank tellers with a demand note and claimed to have a gun[5].

Bank robbery is one of the most serious crimes that courts encounter.  The crime has an immeasurable impact on the bank, its employees, customers, and the entire financial institution of the United States.  Moreover, Woodley's bank robberies were not random or isolated events.  Woodley had committed the same crime before.  Having experienced a dye pack explosion during a previous bank robbery in 2003, Woodley consciously demanded the tellers not employ dye packs during these robberies.

Woodley has refused to adjust his life-style choices despite countless opportunities on state sponsored probation and federal supervised release.

## V.   <u>CONCLUSION</u>

For the reasons stated herein, the government requests this Court impose a sentence of 100 months' imprisonment, the low-end of the advisory guideline.  Following the completion of this sentence, the government also requests that Woodley be on supervised release for a period of five years.  During the term of supervised release, the government implores this Court to require Woodley to attend and complete drug and alcohol

---

[5] Woodley was not found to have been in possession of a gun during these robberies.

counseling, job counseling, and any other programs, in-patient or outpatient, available. Additionally, the Court should order Woodley to pay restitution of $1,526.01 to Santander Bank, and be ordered to pay a special assessment of $300.00.

This is a just and appropriate sentence as dictated by the facts and circumstances of this case and Woodley's life-long criminal history, recurrent probation violations, and complete disregard for the law.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:  */s/ Kenneth G. Shine*
KENNETH G. SHINE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kenneth G. Shine*
KENNETH G. SHINE
Assistant U.S. Attorney